Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| SABANERA RESIDENTIAL HOLD LLC  **Apelado**  V.  CAOBANO ANTHONY ORTIZ/NATALIYA VITALIIVNA PREISS  **Apelante** | KLAN202400113 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan  Civil. Núm. BY2022CV01886  Sobre: Incumplimiento de Contrato, Cobro de Dinero-Ordinario |
| --- | --- | --- |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard.

**Hernández Sánchez, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 13 de marzo de 2024.

El 8 de febrero de 2024, el Sr. Caonabo Anthony Ortiz y la Sra. Nataliya Vitaliiva Preiss (en conjunto, los apelantes) comparecieron ante nos mediante un recurso de *Apelación Civil* y solicitaron la revisión de una *Sentencia* que se dictó y notificó el 17 de noviembre de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI). Mediante el aludido dictamen, el TPI declaró Ha Lugar la *Moción de Sentencia Sumaria* que presentó Sabanera Residential Hold LLC (Sabanera o apelado). En consecuencia, declaró No Ha Lugar la *Solicitud de Sentencia Sumaria* que presentaron los apelantes.

Por los fundamentos que expondremos a continuación, **modificamos** el dictamen recurrido y así modificado **confirmamos**.

I.

El 13 de abril de 2022, Sabanera presentó una *Demanda* sobre incumplimiento de contrato y cobro de dinero en contra de los apelantes.[1] Alegó que, el 5 de julio de 2021, suscribió un acuerdo

---

[1] Véase, págs. 23-31 del apéndice del recurso.

contractual titulado *Residential Lease* (el Acuerdo) con los apelantes mediante el cual estos últimos acordaron arrendar una propiedad ubicada en el municipio de Dorado por el término de dieciocho (18) meses, a saber, desde el 1 de julio de 2021 hasta el 31 de diciembre de 2022. Sostuvo que, de igual forma, mediante este contrato, se acordó que los cánones de arrendamiento serían los siguientes: (1) la suma de $72,000.00 al firmar el contrato hasta el 31 de diciembre de 2021; (2) la suma de $78,000.00 el 23 de diciembre de 2021 hasta el 30 de junio de 2022; y, por último, (3) la suma de $84,000.00 hasta el 31 de diciembre de 2022. Además, adujo que acordaron consignar un depósito de seguridad a modo de fianza por la cantidad de $12,000.00. Indicó que, los apelantes cumplieron con el primer pago y el pago de la fianza, sin embargo, cuando les correspondía efectuar el segundo pago no lo hicieron.

Expresó que, ante el incumplimiento con el pago correspondiente, les efectuó varias comunicaciones a los apelantes exigiéndole que cumplieran con este e incluso añadió que en un acto de buena fe les ofreció la posibilidad de la recisión prematura del acuerdo y buscar a un arrendatario sustituto si realizaban el pago. Sostuvo que, a pesar de las diligencias antes expresadas, los apelantes se negaron a pagar el canon de arrendamiento correspondiente y abandonaron la propiedad el 4 de marzo de 2022. Ante ello, señaló que tuvieron que asumir gastos de mantenimiento, limpieza, utilidades, renovaciones y contratación de corredores para la búsqueda de un arrendatario sustituto por lo que reclamó daños que ascendían a una cantidad aproximada de $22,000.00. Asimismo, afirmó que los apelantes le adeudaban $136,000.00 por concepto de cánones de arrendamiento más las penalidades por mora a razón de cinco (5%) porciento. Indicó que dicha suma estaba vencida, y era liquida y exigible. Así pues, le solicitó al TPI que declarara Ha Lugar la *Demanda.*

Luego de varios trámites procesales que no son pertinentes discutir, el 22 de noviembre de 2022, los apelantes presentaron su *Contestación a Demanda.*[2] En esta, negaron la mayoría de las alegaciones en su contra y presentaron sus defensas afirmativas. Específicamente argumentaron que las partes habían acordado que estaría a la discreción de los arrendatarios, a saber, los apelantes, hacer los pagos por concepto de canon de arrendamiento mensual o semestral por lo que no tenían la obligación de realizar el pago de $78,000.00 cuando se les exigió. Además, señalaron que las partes por mutuo acuerdo, en el mes de enero, modificaron el Acuerdo a los fines de que se les permitiera a los apelantes entregar la llave de la propiedad en o antes del mes de marzo de 2022 y que luego se les entregaría la fianza consignada de $12,000.00. Por estas razones concluyeron que se debía declarar No Ha Lugar la *Demanda.*

Así las cosas y tras numerosos incidentes procesales, el 15 de septiembre de 2023, Sabanera presentó una *Moción de Sentencia Sumaria.*[3] En primer lugar, enumeró veintiséis (26) hechos que, a su juicio, no estaban en controversia. Luego, argumentó que los hechos antes expuestos eran suficientes para evidenciar que los apelantes firmaron el Acuerdo de manera libre, voluntariamente y con conocimiento de su naturaleza y extensión y que posteriormente incumplieron con este sin justificación en derecho. Además, puntualizó que no quedaba duda de que tenía el derecho de solicitar el pago en daños por el incumplimiento con el Acuerdo en la medida que tuvo que incurrir en gastos relacionadas al abandono prematuro del arrendamiento de la propiedad. Señaló que estos gastos incluían el pago de utilidades, reparaciones, pintura, limpieza y contratación de una corredora de bienes raíces para obtener un nuevo arrendatario.

---

[2] Íd., págs. 207-210.
[3] Íd., págs. 211-220.

A tenor con lo antes expuesto, le solicitó al TPI a que resolviera que los apelantes habían incurrido en incumplimiento contractual y, en consecuencia, les ordenara a pagar los cánones de arrendamiento adeudados, la penalidad por morosidad, que permitiera la retención del depósito de seguridad y, por último, ordenara el pago de los daños por concepto de abandono prematuro de la propiedad arrendada.

Por su parte, el 19 de septiembre de 2023, los apelantes presentaron su *Solicitud de Sentencia Sumaria*.[4] En esta, desglosaron diecinueve (19) hechos que, a su juicio, no estaban en controversia. Así pues, argumentaron que lo que restaba determinar era si en efecto se cambió el contrato de arrendamiento en el mes de enero de 2022 por virtud de otro acuerdo que les permitieron entregar las llaves de la propiedad en o antes del primero de marzo de 2022 para que luego se les entregara el deposito de seguridad de $12,000.00. Afirmaron que para adjudicar dicha cuestión no era necesario celebrar una vista en su fondo.

Sostuvieron que con los hechos que a su juicio no estaban en controversia y la evidencia documental que acompañaba la referida solicitud, era evidente de que se configuró una novación que extinguió el contrato de arrendamiento que se suscribió por las partes el 5 de julio de 2021. Específicamente, puntualizaron que esa novación tuvo el efecto de sustituir la obligación principal de pagar los $78,000.00 por concepto de canon de arrendamiento que debían pagar para el 23 de diciembre de 2021 que se estipuló en la cláusula núm. 2 (b) del Acuerdo. Asimismo, señalaron que la propiedad objeto de esta controversia se mercadeó mediante una plataforma virtual llamada *Zillow* y ello tuvo el efecto de sustituir la obligación de permanecer en la propiedad por el término de dieciocho (18) meses

---

[4] Íd., págs. 348-361.

que se acordó en la Cláusula Núm. 3 del Acuerdo. Por último, indicaron que, durante el mes de febrero de 2022, mientras tuvieron posesión de la propiedad, esta última fue reacondicionada y que posteriormente, el 4 de marzo de 2022, se entregaron las llaves de la propiedad. Por las razones antes expuestas, razonaron que procedía dictar sentencia sumaria a su favor.

El 11 de octubre de 2023, los apelantes presentaron una *Contestación a: Moción de Sentencia Sumaria.*[5] En síntesis, reiteraron los argumentos que expusieron en su *Solicitud de Sentencia Sumaria* del 19 de septiembre de 2023. Posteriormente, Sabanera presentó una *Oposición a Solicitud de Sentencia Sumaria* [...].[6] Argumentó que los apelantes no lograron establecer que el Acuerdo se enmendó y que ello provocara la novación de este. Específicamente puntualizó que no existía ningún acuerdo o enmienda al Acuerdo por escrito, firmado entre las partes y por la corredora de bienes raíces como lo exige la clausula núm. 20 del Acuerdo. Sin embargo, afirmó que sí hubo un ánimo por su parte para dialogar en cuanto a una posible "salida amistosa" ante el aviso por parte de los apelantes de que no iban a continuar ocupando la propiedad, pero que ello estuvo condicionado a que estos últimos cumplieran con el canon de arrendamiento adeudado lo cual no ocurrió.

Por otro lado, aclaró que no tenían otra opción que mercadear la propiedad por la plataforma de *Zillow* ante la decisión unilateral de los apelantes de abandonar la propiedad unilateralmente. Afirmó que nunca se acordó la entrega de llaves antes de marzo de 2022 y que luego se entregarían los $12,000.00 por concepto de depósito de seguridad. Por último, reiteró numerosas veces que la evidencia presentada para apoyar los hechos era inadmisible y como quiera

---

[5] Íd., págs. 380-385.
[6] Íd., págs. 386-395.

estas reflejaban expresiones y/o actuaciones unilaterales dirigidas a evitar sus obligaciones. A la luz de lo antes expuesto, concluyó que el TPI debía declarar No Ha Lugar la solicitud de sentencia sumaria de los apelantes.

Evaluados los escritos de ambas partes, la prueba documental que incluyeron las partes en apoyo a sus solicitudes y la totalidad del expediente, el 17 de noviembre de 2023, el TPI dictó y notificó una *Sentencia.*[7] En primer lugar, realizó las siguientes determinaciones de hechos:

1. El 5 de julio de 2021, el Sr. Ortiz y la Sra. Vitaliivna-Preiss suscribieron un documento contractual con Sabanera titulado "Residential Lease".

2. Mediante el acuerdo, los demandados acordaron arrendar de Sabanera la propiedad residencial localizada en Camino del Yunque #481, Sabanera de Dorado, Dorado, Puerto Rico 00646.

3. Los demandados acordaron pagar los cánones de arrendamiento de la propiedad sujeto a los siguientes términos establecidos: a) *the sum of $72,000 on execution of this Agreement for the period until December 31, 2021.* b) *the sum of $78,000 on December 23, 2021, for the period until June 30, 2022; and c) the sum of $84,000 on June 24, 2022, for the period until December 31, 2022; … A 5% penalty will be collected if payments is received five days later than the dates specified above.*

4. Además, los demandados acordaron consignar un depósito de seguridad al momento de la firma del acuerdo por la cantidad global de $12,000.00.

5. Dicha cantidad sería devuelta por Sabanera si los demandados cumplían con ciertas condiciones como, por ejemplo, y entre otras: el pago completo de la renta sujeto a los términos.

6. El término del acuerdo establecido entre las partes fue dieciocho (18) meses; es decir, desde el 1 de julio de 2021 hasta el 31 de diciembre de 2022.

7. En lo pertinente, el acuerdo dispone los siguientes términos y condiciones respecto al incumplimiento y/o abandono por parte de los demandados:

> Default – If any default is made in the payment of rent, or any part thereof, at the times hereinbefore specified, or if any default is made in the performance of or compliance with any other

---

[7] Íd., págs. 6-22.

term or condition hereof, this Agreement, at the option of Lessor, shall terminate and be forfeited. Lessor may re-enter the Property and remove all persons therein. Lessee shall be given written notice of any default or breach, and termination and forfeiture of the lease shall not result if, within ten days of receipt of such notice, Lessee has corrected the default or breach or has taken reasonable action likely to affect such correction within a reasonable time. Upon Lessee's failure to make the rental payment for a period of thirty (30) days or more, Lessor shall have the right to deem the Property abandoned by Lessee and the conditions on Abandonment on next paragraph shall apply.

Abandonment - If at any time during the term of this Agreement: (i) Lessee abandons the Property for a period of 30 days or more without notifying the Lessor; or, (ii) fails to cure any failure to pay rent within thirty days of the due date, Lessor may, at his option, enter the Property by any means without being liable for any prosecution therefore, and without becoming liable to Lessee for damages or for any payment of any kind whatsoever. Lessor may also, at his discretion, as agent for Lessee, re- let the Property, for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such re-letting. This reletting by Lessor shall not release Lessee of his obligations under this Agreement. If Lessor's right of reentry is exercised following abandonment of the Property by Lessee, Lessor may consider any personal property belonging to Lessee and left on the Property to also have been abandoned, in which case Lessor may dispose of all such personal property in any manner Lessor shall deem proper and is hereby relieved of all liability for doing so.

8. El acuerdo dispone, además, que el mismo constituye la totalidad de los pactos entre las partes y que el mismo no se modificará, cambiará, alterará o enmendará de manera alguna excepto mediante enmienda por escrito, firmada por todas las partes, incluyendo los corredores de bienes raíces:

Modification- The parties hereby agree that this document contains the entire agreement between the parties and this Agreement will not be modified, changed, altered or amended in any way except through a written amendment signed by all of the parties hereto including the real estate agents.

9. Con la firma del acuerdo, los demandados hicieron el primer pago de $72,000.00 y el depósito de seguridad de $12,000.00, y arrendaron la propiedad.

10. Llegado el 23 de diciembre de 2021, fecha del segundo pago bajo el acuerdo, los demandados no pagaron la suma correspondiente de $78,000.00.

11. Ante el impago, el 26 de diciembre de 2021, Sabanera cursó una comunicación por correo electrónico a manera de seguimiento al Sr. Ortiz increpando por el segundo pago estipulado bajo el acuerdo.

12. El 27 de diciembre de 2021, el Sr. Ortiz respondió que no era capaz de hacer el segundo pago en su totalidad y que sólo pagaría por los meses de enero y febrero en una fecha incierta posterior.

13. Los demandados, quienes eran pareja consensual, se separaron a mediados de diciembre de 2021 e informaron al demandante por escrito el 27 de diciembre de 2021 que por dicho motivo no iban a poder continuar con el alquiler de la propiedad objeto de arrendamiento; que le pagarían el mes de enero y febrero de 2022; que se podrían quedar hasta el primero de marzo de 2022.

14. En dicha comunicación el Sr. Ortiz añadió que ni él ni la Sra. Vitaliivna-Preiss podrían permanecer en la propiedad, por lo cual solicitó subarrendar la propiedad.

15. El 28 de diciembre de 2021, Sabanera contestó el mensaje del Sr. Ortiz y exigió el segundo pago correspondiente a los próximos seis (6) meses puesto que el mismo estaba vencido. Además, le comunicó al Sr. Ortiz que, una vez realizado dicho pago, Sabanera estaba dispuesta a considerar la rescisión prematura del acuerdo con los demandados y a buscar un arrendatario sustituto sujeto a las inspecciones y aprobaciones de rigor. Las gestiones asociadas a la rescisión del acuerdo y la búsqueda del arrendatario sustituto también serían responsabilidad de los demandados.

16. En esa misma comunicación, Sabanera incluyó una carta exigiendo formalmente el pago vencido por la suma de $78,000.00 y donde se reservó el derecho de instar una acción legal contra los demandados.

17. El 28 de diciembre de 2021, el Sr. Ortiz se volvió a negar a pagar la suma adeudada.

18. Las partes nunca suscribieron una enmienda por escrito al Acuerdo conforme lo dispone la cláusula veinte (20) del mismo.

19. Ante la negativa de pago del Sr. Ortiz, Sabanera decretó el incumplimiento del acuerdo y asumió la responsabilidad de coordinar y manejar los esfuerzos de búsqueda de un arrendatario sustituto.

20. Sabanera tuvo que cubrir los gastos de electricidad y agua para los meses de marzo, abril, mayo y junio de 2022 ascendientes a $3,019.06.

21. Asimismo, Sabanera contrató a Ana Dumar, corredora de bienes raíces y otras herramientas para la búsqueda de un arrendatario sustituto por una suma no menor de $16,000.00, más el Impuesto sobre Ventas y Uso (IVU) de 4%.

22. Como consecuencia directa del hecho de que los demandados se fueron de la propiedad, Sabanera tuvo que incurrir en gastos de renovaciones a paredes, pintura y limpieza profesional ascendentes aproximadamente a $4,182.74.22

23. Como consecuencia directa del hecho de que los demandados se fueron de la propiedad, Sabanera tuvo que incurrir en gastos de mantenimiento de piscina para los meses de marzo, abril y mayo de 2022 ascendentes a $585.00.23

24. El 7 de marzo de 2022, Sabanera, representada por el Lcdo. Luis M. Nolla-Vilá, cursó una notificación formal de impago y reserva de derechos al Sr. Ortiz.

Luego, conforme a las determinaciones de hechos antes expuestas, el derecho aplicable y la prueba documental que obra del expediente el TPI resolvió lo siguiente:

De la cláusula veinte (20) claramente se desprende que, para enmendar el contrato, esta debía realizarse por escrito y estar firmada por todas las partes, incluyendo a los corredores de bienes raíces. Surge de la deposición del Sr. Ortiz, que esto nunca sucedió. Las partes nunca suscribieron una enmienda por escrito sobre el contrato en cuestión. Por consiguiente, Ortiz y Preiss se encontraban obligados a continuar realizando los pagos referentes a los cánones de arrendamiento, servicios de mantenimiento y cuidado de la propiedad, aun cuando no se encontraban viviendo en esta. Así mismo, recordemos que la cláusula catorce (14) del contrato de arrendamiento claramente disponía que la falta de pago por un periodo mayor de treinta (30) días, constituiría abandono de la propiedad. En consecuencia, el impago por parte de los demandados desde el mes de marzo constituyó abandono. En vista de ello, Sabanera tenía derecho a retener el depósito de

seguridad de $12,000.00 por incumplir las condiciones del contrato, y a realizar los trámites necesarios para encontrar un arrendatario sustituto.

[...]

Ortiz y Preiss han incumplido con lo pactado en el contrato debido a que se han negado a pagar los cánones de arrendamiento más las penalidades por mora, a pesar de que estas sumas son líquidas, están vencidas y son exigibles en derecho por parte de Sabanera. A su vez, dicho incumplimiento ha tenido como consecuencia que Sabanera incurra en gastos asociados al mantenimiento de la propiedad, los cuales son atribuibles a los demandados. Por lo tanto, Ortiz y Preiss son responsables por los gastos incurridos por parte de Sabanera, así como también, del pago de los cánones de arrendamiento por concepto del abandono prematuro de la propiedad. A tono con lo anterior, este tribunal no encuentra razón de peso alguna para determinar lo contrario. Por tanto, los demandados adeudan a Sabanera la cantidad de $136,000.0026 por concepto de cánones de arrendamiento dejados de pagar, más las penalidades por mora a razón de cinco por ciento (5%). A su vez, adeudan los pagos en daños correspondientes a dicho incumplimiento los cuales se desglosan como sigue: (1) $3,019.06 por concepto de utilidades (agua y luz); (2) $4,182.74 por concepto de reparaciones, pintura y limpieza; y (3) $585.00 por concepto de mantenimiento de piscina. Por su parte, del contrato no surge disposición alguna en cuanto a que los demandados tengan que hacerse cargo de los gastos incurridos al contratar una corredora de bienes raíces. Al no pactarse directamente dicha responsabilidad, no procede el pago de la suma de $16,000.00, más el 4% de IVU, solicitada. Por todo lo cual, Ortiz y Preiss adeudan una cantidad global ascendente a los $143,786.80.

En vista de lo antes mencionado, el TPI declaró No Ha Lugar la *Solicitud de Sentencia Sumaria* que presentaron los apelantes y Ha Lugar la *Moción de Sentencia Sumaria* que presentó Sabanera. Inconforme con esta determinación, el 4 de diciembre de 2023, los apelantes presentaron una solicitud de reconsideración.[8] La parte apelada presentó su oposición.[9] Posteriormente, el 31 de enero de 2024, los apelantes presentaron una *Moción Reiterando Reconsideración* [...].[10] En respuesta, el 9 de enero de 2024, el TPI

---

[8] Íd., págs. 396-406.
[9] Íd., págs. 407-412.
[10] Íd., págs. 413-418.

emitió y notificó una *Resolución* declarando No Ha Lugar la solicitud de reconsideración que presentaron los apelantes.

Aún en desacuerdo, el 8 de febrero de 2024, los apelantes presentaron el recurso de epígrafe y formularon los siguientes señalamientos de error:

**PRIMER ERROR: Incurrió el TPI en un error de derecho al interpretar que el arrendador Recurrido, bajo la Cláusula 14 del Contrato de Arrendamiento, podía volver a arrendar la propiedad en caso de abandono, "sin liberar al arrendatario anterior de su obligación de pagar los cánones de arrendamiento estipulados en el contrato", y por tanto, exigir la totalidad de renta por todo el término restante luego de considerar abandonada la propiedad, cuando dicha interpretación es contraria a los principios de interpretación del negocio jurídico, particularmente el inciso (c) del Artículo 358 del Código Civil de Puerto Rico (2020), entre otros, toda vez que aquí, siendo el arrendamiento un negocio bilateral, y habiendo sido el arrendador Recurrido quien redactó el Contrato de Arrendamiento y/o el arrendatario Recurrente la parte que tuvo menor poder de negociación, toda interpretación habría de ser en favor de éste último si resultase cualquier tipo de ambigüedad.**

**En la alternativa, aun siendo procedente la interpretación de que el arrendatario Recurrente no queda liberado de pagar los cánones estipulados en el contrato, erró el Tribunal al determinar que el arrendador Recurrido debía ser indemnizado por una cantidad global ascendiente a $143,786.80 en concepto de cánones de arrendamiento de marzo a diciembre, penalidades por mora a razón de cinco por ciento 5%, utilidades, reparaciones, pintura y limpieza, mantenimiento de piscina, allí cuando el Recurrido, como cuestión de hecho, retuvo el depósito de seguridad de $12,000.00, curó el alegado impago de $136,000.00 en concepto de Renta con un nuevo arrendamiento que representó $196,000.00, demostrando ello que éste no tuvo lesión patrimonial, hecho que forzosamente hace de su causa de acción por daños y perjuicios contractuales una que no aduce hechos que justifican la concesión de un remedio, procediendo su desestimación al tenor de lo dispuesto en la Regla 10.2 inciso (5).**

**Este error fue decisivo y/o sustancial en la Sentencia que adjudicó las mociones dispositivas presentadas al amparo de la Regla 36 de Procedimiento Civil (2009), y cuya revocación aquí solicitamos.**

**SEGUNDO ERROR: Incurrió el TPI en un error de derecho al determinar que la cláusula cuarta del**

**Contrato de Arrendamiento no es una cláusula penal. Este error fue decisivo y/o sustancial en la Resolución que reiteró la Sentencia dictada el 17 de noviembre de 2023, y cuya revocación aquí solicitamos.**

**TERCER ERROR: Incurrió el TPI en un error de derecho al determinar que los Recurrentes arguyeron que el Contrato de Arrendamiento fue enmendado, cuando éstos clara y expresamente contendieron en su Solicitud de Sentencia Sumaria la extinción del mismo, invocando novación contractual por la incompatibilidad de las obligaciones, y demostrando hechos materiales fehacientes en cumplimiento con la Regla 36 de Procedimiento Civil (2009) y su jurisprudencia interpretativa que alteran el resultado del caso e impiden la disposición sumaria de la controversia.**

**Este erro fue decisivo y/o sustancial en la Sentencia que adjudicó las mociones dispositivas presentadas al amparo de la Regla 36 de Procedimiento Civil (2009), y cuya revocación aquí solicitamos.**

Atendido el recurso, el 12 de febrero de 2024, emitimos una *Resolución* concediéndole a Sabanera hasta el 7 de marzo de 2024 para someter su alegato en oposición. Oportunamente, la parte apelada presentó un *Alegato de la Parte Apelada* y negó que el TPI cometiera los errores que los apelantes le imputaron. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver. *Veamos.*

II.

-A-

En esencia, el principio rector de las Reglas de Procedimiento Civil es proveerles a las partes envueltas en un pleito legal, una solución justa, rápida y económica en todo procedimiento. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R.1. El mecanismo de sentencia sumaria provisto en la Regla 36 de Procedimiento Civil, *supra*, hace viable este objetivo en aquellos casos en que surja de forma clara que no existen controversias materiales de hechos que requieren ventilarse en un juicio plenario y el derecho así lo permita.

Conforme a la Regla 36.3 (e) de Procedimiento Civil, *supra,* se dictará sentencia sumaria "si las alegaciones, deposiciones,

contestaciones e interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente, y, además, si el derecho aplicable así lo justifica". A estos efectos, el foro judicial tiene la potestad para disponer de asuntos pendientes sin la necesidad de celebrar un juicio, esto debido a que lo que restaría sería aplicar el derecho a los hechos no controvertidos. *Mejías et al. v. Carrasquillo et al.*, 185 DPR 288, 299 (2012).

Es menester destacar, que solo procede dictar sentencia sumaria cuando surge claramente que el promovido no puede prevalecer y que el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia. *Mejías et al. v. Carrasquillo et al.,* supra, pág. 299. Por lo tanto, no procede dictar sentencia sumaria cuando no existe una clara certeza sobre todos los hechos materiales en la controversia. Íd. Aun así, "[c]ualquier duda no es suficiente para derrotar una moción de sentencia sumaria. Tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes". *Ramos Pérez v. Univisión,* 178 DPR 200, 214 (2010). En reiteradas ocasiones, el Tribunal Supremo ha establecido que se considera como un hecho esencial y pertinente, aquel que "puede afectar el resultado de la reclamación acorde con el derecho sustantivo aplicable". Íd., pág. 213. Dicho esto, para que proceda una moción de sentencia sumaria no tan solo se requiere que haya una inexistencia de hechos en controversia, sino que también la sentencia que dicte el foro judicial tiene que proceder conforme al derecho sustantivo aplicable.

En particular, la Regla 36.2 de Procedimiento Civil, *supra*, permite que cualquier parte presente una moción, basada en declaraciones juradas, o en aquella evidencia que demuestre la

inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación. Al solicitar dicho remedio, la parte que promueve la sentencia sumaria "deberá establecer su derecho con claridad y demostrar que no existe controversia sustancial sobre algún hecho material, o sea, sobre ningún componente de la causa de acción". *Municipio de Añasco v. ASES et al.,* 188 DPR 307, 310 (2013).

Por su parte, la parte que se opone a la sentencia sumaria no puede tomar una actitud pasiva y descansar en las aseveraciones o negaciones consignadas en su alegación. *Roldán Flores v. M. Cuebas et al.*, 199 DPR 664, 677 (2018). Por el contrario, esa persona viene obligada a enfrentar la moción de su adversatario de forma tan detallada y especifica como lo ha hecho el promovente en su solicitud puesto que, si incumple con lo antes mencionado corre el riesgo de que se dicte sentencia es su contra. *SLG Zapata- Rivera v. J.F. Montalvo*, 189 DPR 414, 432 (2013). Específicamente, la Regla 36.3 de Procedimiento Civil, *supra,* expone los criterios que debe cumplir la parte que se opone a la moción de sentencia sumaria.

Al amparo de dicha regla, la oposición a la solicitud de sentencia sumaria el promovido debe, como parte de su carga desglosar los hechos sobre los que aduce que no existe controversia, y, además para cada uno de ellos debe especificar la página o párrafo de la declaración jurada u otra prueba admisible en evidencia que lo apoya. Asimismo, cabe destacar que, la *Regla 36.5 de Procedimiento Civil,* supra, establece que las declaraciones juradas para sostener u oponerse a una moción de sentencia sumaria que contienen solo conclusiones, sin hechos específicos que las apoyen, no tienen valor probatorio, por lo que son insuficientes para demostrar la existencia de lo que allí se concluye.

Según dispone el caso de *Mejías et al. v. Carrasquillo et al.,* supra, pág. 300 citando a: *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 280-281 (1990), "al evaluar una moción de sentencia sumaria, los jueces no están limitados por los hechos o documentos que se aduzcan en la solicitud, sino que deben considerar todos los documentos en autos, sean o no parte de la solicitud de sentencia sumaria de los cuales surjan admisiones hechas por las partes".

En síntesis, no procede dictar sentencia sumaria cuando: (1) existen hechos materiales y esenciales en controversia; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción de sentencia sumaria una controversia real sobre algún hecho material y esencial; (4) como cuestión de derecho no procede. *Pepsi-Cola v. Mun. Cidra,* 186 DPR 713, 757 (2012); *Ramos Pérez v. Univisión, supra,* pág. 217. Además, no se debe adjudicar un caso sumariamente cuando existe controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor credibilidad es esencial y está en disputa. Íd. pág. 219.

Ahora bien, según *Verá v. Dr. Bravo,* 161 DPR 308, 334-335 (2004) este Foro Apelativo utilizará los mismos criterios que el Tribunal de Primera Instancia al determinar si procede una sentencia sumaria. Sin embargo, el Tribunal Supremo especifica que, al revisar la determinación de primera instancia sólo podemos considerar los documentos que se presentaron ante el TPI. Íd. Lo anterior, debido a que "las partes no pueden añadir en apelación *exhibits,* deposiciones o affidávits que no fueron presentadas oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo". Íd. Además, sólo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si

el derecho se aplicó de forma correcta. Íd. Es decir, no podemos adjudicar los hechos materiales y esenciales en disputa, ya que esta tarea le corresponde al Tribunal de Primera Instancia. Íd.

Por otro lado, en *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 118 (2015), el Tribunal Supremo estableció que al revisar una determinación del foro primario en la que se concedió o denegó una moción de sentencia sumaria debemos: (1) examinar de *novo* el expediente; (2) revisar que la moción de sentencia sumaria y su oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra,* y con los discutidos en *SLG Zapata-Rivera v. J. Montalvo, supra;* (3) en el caso de una revisión de una sentencia dictada sumariamente, debemos revisar si en realidad existen hechos materiales en controversia, y de haberlos, exponer concretamente cuáles están en controversia y cuáles no; y (4) de encontrar que los hechos materiales no están en controversia, debemos revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el derecho. *Rivera Matos, et al. v. Triple-S et al.,* 204 DPR 1010, 1025 (2020).

**-B-**

Las obligaciones surgen de la ley, los contratos, los cuasicontratos, los actos lícitos, las acciones u omisiones en la cual medie culpa o negligencia y cualquier otro acto idóneo para producirlas, conforme con el ordenamiento jurídico. Art. 1063 del Código Civil de 2020, 31 LPRA sec.8984. En lo pertinente al asunto ante nos, los contratos son un negocio jurídico bilateral en el cual dos o más partes prestan su consentimiento para crear, regular, modificar o extinguir obligaciones. Art. 1230 del Código Civil de 2020, 31 LPRA sec. 9751. Los contratos son negocios jurídicos desde que las partes manifiestan su consentimiento sobre el objeto y la causa. Art. 1237 del Código Civil de 2020, 31 LPRA sec. 9772. Mediante un contrato las partes pueden acordar cualquier cláusula

que no sea contraria a la ley, a la moral o al orden público. Art. 1232 del Código Civil de 2020, 31 LPRA sec. 9753. Aquellas obligaciones derivadas de un contrato tendrán fuerza de ley entre las partes, sus sucesores y ante terceros en la forma que dispone la ley. Art. 1233 del Código Civil 2020, 31 LPRA sec. 9754. Consecuentemente, **los tribunales no podemos relevar a una parte de cumplir con el contrato cuando éste es legal y válido y no contiene vicio alguno.** (Énfasis suplido) *Mercado, Quilichini v. U.C.P.R.*, 143 DPR 610, 627 (1997).

Consonó con lo anterior, sabido es que, en el ámbito de las obligaciones y contratos, es una doctrina fundamental que **cuando los términos de un contrato son claros, y no dejan lugar a dudas sobre la intención de los contratantes, no cabe recurrir a reglas de interpretación.** (Énfasis suplido) Art. 354 del Código Civil de 2020, 31 LPRA sec. 6342. Los términos de un contrato se reputan claros "cuando por sí mismos son bastantes lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias, ni diversidad de interpretaciones y sin necesitar para su comprensión razonamientos o demostraciones susceptibles de impugnación". *S.L.G. Francis-Acevedo v. SIMED,* 176 DPR 372, 387 (2009). Así pues, **en ausencia de ambigüedad, las cláusulas del contrato obligan a los contratantes.** (Énfasis suplido) Íd., pág. 387.

**-C-**

El Art. 1182 del Código Civil de 2020, 31 LPRA sec. 9421, define la novación como la sustitución de una obligación previa por una nueva, la cual extingue la primera. La novación se puede llevar a cabo mediante la variación del objeto o condiciones principales de una obligación, sustituyendo la persona del deudor por otro, o la sustitución del antiguo acreedor por otro. Art. 1183 del Código Civil de 2020, 31 LPRA sec. 9422. Ahora bien, la novación de una

obligación puede ser modificativa o extintiva. *PDCM Assoc. v. Najul Bez,* 174 DPR 716, 725 (2008). En lo pertinente al caso ante nos, **para que una obligación se considere como extinguida por otra, es necesario que así se establezca terminantemente** o que ambas obligaciones sean totalmente incompatibles. (Énfasis suplido) Art. 1184 del Código Civil de 2020, 31 LPRA sec. 9423. De manera que, **es un elemento indispensable de la vertiente extintiva el *animus novandi,* es decir, la voluntad expresa de extinguir una obligación por otra.** (Énfasis suplido) Íd., pág. 726. Ello, ya que la novación "encierra un asunto de intención que debemos inferir de las circunstancias de cada caso y de la voluntad de las partes". Íd.

### III.

En su primer señalamiento de error, en esencia, los apelantes argumentaron que el TPI erró al interpretar la cláusula núm. 14 del Acuerdo establecía que Sabanera podía volver a arrendar la propiedad objeto de esta controversia sin liberarlos del pago de los cánones de arrendamiento. Asimismo, la parte apelante añadió que en la alternativa de que resolviéramos que los apelantes en efecto no estaban liberados de pagar los cánones de arrendamiento establecidos en el Acuerdo, que erró el TPI al determinar que Sabanera debía ser indemnizada por una cantidad global de $143,786.80. Ello, en concepto de cánones de arrendamiento de marzo a diciembre del año 2022, penalidades por mora a razón de 5%, utilidades, reparaciones, pintura, limpieza, y mantenimiento de piscina.

Por otro lado, en su segundo señalamiento de error, sostuvieron que el TPI erró al no determinar que la cláusula núm. 4 del Acuerdo era una cláusula penal. Por último, en su tercer señalamiento de error, alegaron que el TPI erró al establecer que los apelantes habían argumentado que el Acuerdo fue enmendado. Ello,

ya que lo que plantearon fue que el Acuerdo se extinguió a través de una novación contractual por incompatibilidad de las obligaciones.

Según el precitado derecho, al momento de revisar la concesión de una solicitud de sentencia sumaria, nos encontramos en la misma posición que el TPI. Así pues, en primer lugar, debemos evaluar si al presentar la solicitud de sentencia sumaria y su oposición las partes cumplieron con los requisitos de forma establecidos en la Regla 36.3 de Procedimiento Civil, *supra*, y con los dispuesto en *SLG Zapata-Rivera v. J.F. Montalvo, supra.* Al evaluar los escritos presentados por las partes resolvemos que, en esencia, ambas cumplieron con los referidos requisitos. Resuelto lo anterior, nos corresponde evaluar si existen hechos materiales en controversia y de haberlos, exponer concretamente cuáles están en controversia y cuáles no. *Veamos.*

Luego de evaluar los argumentos de cada parte y la prueba documental en apoyo a sus contenciones, el TPI realizó veinticuatro (24) determinaciones de hechos incontrovertidos que resumiremos a continuación. El 5 de julio de 2021, los apelantes y Sabanera suscribieron un contrato de arrendamiento intitulado *Residential Lease* mediante el cual los apelantes se comprometieron a arrendar una propiedad ubicada en el municipio de Dorado por el término de dieciocho (18) meses, a saber, desde el 1 de julio de 2021 hasta el 31 de diciembre de 2022. En la cláusula núm. 2 de este contrato, se estipuló el pago de los cánones de arrendamiento sujeto a los siguientes términos: (1) el pago de $72,000.00 por el periodo desde la firma del contrato hasta el 31 de diciembre de 2021; (2) el pago de $78,000.00 el 23 de diciembre de 2021 por el periodo hasta el 30 de junio de 2022; y, por último, (3) la cantidad de $84,000.00 el 24 de junio de 2022 por el periodo hasta el 31 de diciembre de 2022. Cabe precisar que, en esta cláusula también se estipuló que habría

una penalidad de 5% si el pago de canon de arrendamiento se recibía cinco (5) días posteriores a las fechas establecidas anteriormente.

Por otra parte, en la cláusula núm. 4 del Acuerdo, se acordó que los apelantes le entregarían a Sabanera $12,000.00 por concepto de depósito de seguridad al momento de firmar el contrato y esta cantidad sería devuelta a los apelantes si estos cumplían con ciertas condiciones como, por ejemplo, el pago completo de renta sujeto a los términos establecidos. Asimismo, en la cláusula núm. 14 del Acuerdo, se estableció el procedimiento a seguir en el caso en que los apelantes dejaran de pagar la renta estipulada dentro de treinta (30) días posteriores al término establecido para su pago o en caso de abandono de la propiedad por el periodo de treinta (30) días o más sin notificarle a la parte apelada. El Acuerdo en su cláusula núm. 20 disponía que el referido contrato constituía la totalidad de los acuerdos entre las partes y que este no se modificaría, cambiaría, alteraría o enmendaría de manera alguna excepto mediante una enmienda por escrito, firmada por todas las partes, incluyendo los corredores de bienes raíces.

En el momento en que las partes firmaron el Acuerdo, los apelantes hicieron el primer pago de $72,000.00 y el depósito de seguridad de $12,000.00. Sin embargo, cuando llegó la fecha del segundo pago, los apelantes no pagaron la suma de $78,000.00. A tales efectos, Sabanera le cursó a los apelantes un correo electrónico solicitando el segundo pago. Estos últimos le respondieron que no podían efectuarlo en su totalidad ya que se habían separado y únicamente podían pagar la renta por los meses de enero y febrero de 2022 y que se podrían quedar hasta el 1 de marzo de 2022. Los apelantes indicaron además que podían buscar a un sustituto que pudiese subarrendar la propiedad. En respuesta a ello, Sabanera exigió el segundo pago ya que este estaba vencido y, además, les comunicó a los apelantes que una vez realizaran el pago

correspondiente podían auscultar la posibilidad de la rescisión prematura del Acuerdo y buscar un arrendatario sustituto sujeto a las inspecciones y aprobaciones de rigor. Sin embargo, aclararon que la búsqueda de un arrendatario sustituto tendría que ser responsabilidad de los apelantes. De igual forma, indicaron que se reservaban el derecho a instar una acción legal si estos no cumplían con el pago de $78,000.00.

La parte apelante se negó nuevamente a pagar la suma adeudada y nunca se suscribió una enmienda al Acuerdo por escrito conforme lo disponía la cláusula núm. 20. Ante la negativa de los apelantes de cumplir con el contrato, se decretó el incumplimiento de este. De este modo, Sabanera tuvo que realizar esfuerzos para buscar un arrendatario sustituto y tuvo que cubrir los gastos de agua y luz correspondientes a los meses de marzo, abril, mayo y junio de 2022 ascendientes a $3,019.06. Además, por el abandono prematuro de la propiedad por parte de los apelantes, la parte apelada tuvo que incurrir en gastos de renovaciones, pintura y limpieza que ascendían a una cantidad de $4,182.74. Finalmente, la parte apelada también incurrió en gastos de mantenimiento de la piscina para los meses de marzo, abril, mayo y junio de 2022 ascendientes a $585.00.

Tras examinar los hechos materiales incontrovertidos que estableció el TPI, los adoptamos en su totalidad y, en consecuencia, concluimos que no existen hechos sustanciales en controversia que impidan dictar sentencia sumaria. **Sin embargo, consideramos de suma importancia añadir un hecho incontrovertido con el fin de establecer que, por motivo del incumplimiento por parte de los apelantes con varios de los factores a ser considerados para la devolución de los $12,000.00 por concepto del depósito de seguridad, Sabanera retuvo la referida cantidad.** Dicho lo anterior, nos resta determinar lo siguiente: (1) si en efecto, los

apelantes quedaban liberados de pagar los cánones de arrendamiento adeudados desde el 23 de diciembre de 2021 hasta el 31 de diciembre de 2022 a pesar de que la propiedad fuese arrendada por un arrendatario sustituto; (2) si le correspondía a los apelantes pagar la suma total de $7,786.80 por concepto de utilidades, renovaciones, limpieza, pintura y mantenimiento de piscina que tuvo que incurrir la parte apelada por el abandono prematuro de estos de la propiedad; y finalmente, (3) si hubo una novación del Acuerdo que provocó la extinción de este.

Discutiremos los señalamientos de error en conjunto por estar íntimamente relacionados entre sí. La parte apelante, en esencia, argumentó que no adeudaba la cantidad de $136,000.00 por concepto de cánones de arrendamiento ya que la parte apelada arrendó la propiedad a un arrendatario sustituto cuando estos abandonaron la propiedad en marzo de 2022. Además, sostuvo que no debía la cantidad antes expuesta, toda vez que hubo una novación del Acuerdo que provocó la extinción de este. Para sostener este planteamiento, indicó que hubo unas comunicaciones mediante las cuales las partes acordaron que los apelantes pagarían la renta para el mes de enero y febrero del año 2022 y que la propiedad se entregaría en o antes del 1 de marzo de 2022. Además, añadieron que, en cambio, Sabanera se comprometió a devolverles el depósito de seguridad de $12,000.00 siempre y cuando la propiedad se entregara en las condiciones recibidas y se encontrara un arrendatario sustituto.

Según el derecho que antecede, cuando un contrato cumple con los requisitos esenciales para su perfeccionamiento, a saber, los elementos de consentimiento, objeto y causa, las obligaciones contenidas en este tendrán fuerza de ley entre las partes. Arts. 1233 y 1237 del Código Civil de 2020, *supra.* Asimismo, en ausencia de ambigüedad en las cláusulas que contiene el contrato, no cabe

recurrir a las reglas de interpretación por lo que los contratantes están obligados a su cumplimiento. *S.L.G. Francis-Acevedo v. SIMED*, supra, pág. 387. La cláusula núm. 14 del Acuerdo establece que constituye abandono el impago de la renta estipulada dentro de treinta (30) días posteriores al término establecido para el pago de esta. Además, dispone que, en caso de abandono de la propiedad, los arrendadores tienen el derecho a subarrendar la propiedad. **Sin embargo, se hace una aclaración de que ello no exime a los apelantes de cumplir con las obligaciones estipuladas en el contrato.** Como es sabido, unas de las obligaciones que se establecieron en el Acuerdo era el pago de los cánones de arrendamiento en los términos dispuestos en la cláusula núm. 2 de este. Dicho esto, no cabe duda de que aún si Sabanera subarrendaba la propiedad, los apelantes tenían la obligación de pagar la cantidad de $78,000.00 por el término del 23 de diciembre de 2021 hasta el 30 de junio de 2022 y la suma de $84,000.00 por los meses de 24 de junio de 2022 hasta el 31 de diciembre de 2022. Es un hecho incontrovertido que los apelantes se negaron a pagar las cantidades antes expuestas, por lo tanto, también le aplicaban las penalidades por mora a razón de 5% que establece la cláusula núm. 2.

Por otro lado, los apelantes alegaron que el Acuerdo se extinguió debido a que hubo unas comunicaciones entre las partes que provocaron su novación, por lo que no tenían que pagar la cantidad de $78,000.00 y $84,000.00 que les restaba por pagar por concepto de canon de arrendamiento. No les asiste la razón. Si bien es cierto que Sabanera, de buena fe, les comunicó a los apelantes que podrían considerar la recisión prematura del Acuerdo, ello estaba sujeto a tres cosas: (1) que los apelantes realizaran el segundo pago correspondiente; (2) que los apelantes buscaran un arrendatario sustituto; y (3) que se realizaran las inspecciones y

aprobaciones necesarias para asegurarse que la propiedad no tuviese daños. Las partes apelantes nunca cumplieron con ninguno de estos requisitos, por lo que no se pudo dar la recisión prematura del contrato.

Recordemos que para que se dé una novación extintiva, tiene que haber una sustitución de una obligación previa por una nueva, la cual extingue la primera. Art. 1182 del Código Civil de 2020, *supra*. Además, es necesario que las partes lo establezcan terminantemente, es decir, que exista una voluntad expresa de extinguir una obligación por otra. Art. 1184 del Código Civil de 2020, *supra*. Ello no ocurrió en el presente caso. Además, cabe precisar que, la cláusula núm. 20 del Acuerdo disponía que el referido contrato constituía la totalidad de los acuerdos entre las partes y que este no se modificaría, cambiaría, alteraría o enmendaría de manera alguna **excepto mediante una enmienda por escrito, firmada por todas las partes incluyendo los corredores de bienes raíces.** Del expediente no surge la existencia de un nuevo Acuerdo firmado por las partes y por los corredores de bienes raíces que tenga el efecto de enmendar o cambiar de alguna manera el Acuerdo que las partes suscribieron. Así pues, como mencionamos anteriormente, los apelantes están obligados a pagar los cánones de arrendamiento restantes que reclamó la parte apelada que ascendían a la cantidad de $136.000.00 más las penalidades por mora por razón de 5%.

Por último, nos resta determinar si en efecto les correspondía a los apelantes pagar la suma total de $7,786.80 por concepto de utilidades, renovaciones, limpieza, pintura y mantenimiento de piscina que tuvo que incurrir la parte apelada por el abandono prematuro de estos de la propiedad. Es un hecho incontrovertido que la parte apelada retuvo los $12,000.00 por concepto de depósito de seguridad que les entregaron los apelantes el día que se suscribió

el contrato. En cuanto a este depósito de seguridad, la cláusula núm. 4 del Acuerdo establece que para que este se les devuelva a los arrendatarios, se requiere: (1) **la confirmación de que todas las facturas de utilidades estén pagas**, (2) la entrega de las llaves y los controles de los portones, (3) **el pago de la totalidad de la renta** según lo dispone la cláusula núm. 2 del Acuerdo, (4) el **pago por parte de los arrendatarios de todos los daños y reparaciones de la propiedad** exceptuando el deterioro normal de esta, (5) el **cumplimiento de todos los términos y condiciones** estipulados en el Acuerdo, (6) la devolución de todos los enseres de la propiedad en el estado en que se recibieron, y por último (7) que la propiedad se entregue luego de que se limpie profesionalmente.

Conforme a lo antes expuesto, no está en controversia que en efecto Sabanera tenía el derecho de retener los $12,000.00 ya que los apelantes incurrieron en incumplimiento de contrato. Tampoco está en controversia que, debido a este incumplimiento y el abandono prematuro de la propiedad, la parte apelada tuvo que incurrir en gastos por concepto de utilidades (agua y luz) por los meses restantes del contrato, reparaciones, pintura, limpieza y mantenimiento de la piscina que ascendían a una cantidad total de $7,786.80. Estos gastos, indudablemente, son reclamables a los apelados. Sin embargo, el propósito de requerir este tipo de depósito es efectivamente prevenir este tipo de situación en caso de algún incumplimiento por el arrendatario. Consecuentemente, Sabanera debe descontar los gastos incurridos en utilidades, reparaciones, pintura, limpieza y mantenimiento de la piscina del depósito de seguridad que retuvo. Así pues, el TPI erró al no ordenar que la suma de $7,786.80 fuera descontada de los $12,000.00 que retuvo Sabanera por concepto de depósito de seguridad.

## IV.

Por los fundamentos antes expuestos, modificamos el dictamen recurrido con el fin de resolver que los $7,786.80 que incurrió la parte apelada por concepto de pago de utilidades, reparaciones, pintura, limpieza y mantenimiento de la piscina se descuenten de los $12,000.00 por concepto de depósito de seguridad que retuvo Sabanera. Así modificado, confirmamos.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones